Joan A. COX Plaintiff,

v.

**RELIANCE STANDARD LIFE INSURANCE COMPANY,**
Defendant.

Civ. A. No. 01–423–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Nov. 16, 2001.

See also 249 F.3d 295.

Patrick M. Regan, Thanos Basdekis, Regan, Halperin & Long, PLLC, Washington, DC, for Plaintiff.

Edward John Longosz, II, Eckert Seamans Cherin & Mellott, LLC, Washington, DC, for Defendants.

*MEMORANDUM OPINION*

BRINKEMA, District Judge.

Before this Court is Plaintiff's Motion for Attorneys' Fees as Costs. Plaintiff has requested $73,117.95 in fees.[1] In this petition, plaintiff has not requested compensation for any other costs of litigation.

## BACKGROUND

The decedent, Brian Cox, was an employee of Morgan, Lewis & Bockius, LLP in Washington, D.C. As part of his employee benefit package, Mr. Cox was insured under the firm's Accidental Death and Dismemberment policy ("Policy") administered by Reliance Standard Life Insurance Company ("Reliance").

On December 11, 1997, Brian Cox and his wife Joan attended the firm's annual holiday party. Both consumed alcohol at the party. On the way home, the couple argued. Once they reached their home in Dumfries, Virginia, Joan Cox took the couple's vehicle and drove away to sleep elsewhere. She took with her the only set of house keys. Brian Cox was able to enter his home by breaking in through a window in the back of the house. Once he gained entry, he proceeded to the upstairs master bedroom where he fell sleep. Mr. Cox had a rifle next to him in bed.[2] A neighbor who heard the breaking glass called the police.

Three police officers and a canine responded to the suspected burglary. Before entering the Cox residence, the police announced their presence, but the announcement elicited no response. Two of the officers then entered the Cox home

---

1. Plaintiff did not submit a total amount. This number is the Court's calculation of the hours and rates indicated in plaintiff's counsels' affidavits.

2. Plaintiff asserted that her husband slept with the rifle because their home was not secure after he broke a window to get inside.

through the broken rear window and proceeded to open the front door so that the third officer and canine could join them inside. The officers apparently announced their presence again once inside the residence. Mr. Cox did not respond. The officers then began to look around—eventually making their way to the upstairs master bedroom where they found Mr. Brian Cox asleep in bed. When Mr. Cox did not respond to verbal commands to wake up, one of the officers "struck" or "tapped" or "moved" Mr. Cox's feet until he awoke. Police officer witnesses indicated that Mr. Cox was startled and immediately grabbed (or began to grab for) his rifle and allegedly pointed it at the officers. In response, the officers shot Mr. Cox seven times. He died in his bedroom. Brian Cox's widow sought to recover $250,000 in accidental death benefits from Reliance. On March 5, 1998, Mrs. Cox submitted her claim to Reliance. Her claim was initially denied on May 5, 1998 because Reliance concluded that her husband was committing a felony at the time of his death.[3] Mrs. Cox appealed the decision via letter on July 6, 1998. On October 21, 1998, the Quality Review Unit informed Mrs. Cox that the denial of benefits under the felony exclusion was appropriate and final. This litigation ensued.

Plaintiff's original Complaint asserted a breach of contract claim. The case was in federal court due to diversity of citizenship. Upon motion by defendant, on May 18, 2001, plaintiff's breach of contract claim was dismissed and plaintiff was permitted to amend her Complaint to assert a claim under the Employee Retirement Income Security Act (ERISA). 29 U.S.C. § 1132.

Upon the completion of discovery, both parties filed motions for summary judgment.[4] The record revealed that Reliance's investigation of Mrs. Cox's claim was inadequate. Defendant's claims administrators consulted only news reports, and the Medical Examiner's report before making their initial decision to deny benefits to Mrs. Cox. A Reliance administrator did consult the Commonwealth's Attorney's Office before making a determination that the policy's felony exclusion was applicable. However, the Commonwealth's Attorney, unequivocally indicated that it would be impossible to determine whether or not Mr. Cox was committing an assault on police officers at the time of his death because an essential element of the felony is scienter, that is, the person must know or have reason to know he is assaulting a law enforcement officer. Given Mr. Cox's ingestion of alcohol and deep sleep just before being awakened, it was not possible to determine whether he had the requisite state of mind to commit the assault. Despite the opinion of the Commonwealth's Attorney, Reliance invoked the felony exclusion as the basis of the denial.

After litigation was well underway, Reliance altered its rationale for denying coverage, claiming Mr. Cox's death was not an accident. Defendant asserted the "non-accident" rationale had always been a reason for the denial of benefits to Mrs. Cox. We rejected that claim as incredible, based

---

**3.** The Accidental Death policy provided, "The policy does not cover any loss ... sustained during the Insured's commission or attempted commission of a felony."

Reliance claimed that Mr. Cox was acting in violation of Virginia Code § 18.2–57(c) at the time of his death. Section 18.2–57(c) provides, "[I]f a person commits an assault or an assault and battery against another know-

ing or having reason to know that such other person is a law enforcement officer ... engaged in the performance of his public duties as a law enforcement officer ... such person shall be guilty of a Class 6 felony."

**4.** This Court denied defendant's motion for summary judgment on September 24, 2001.

on the record of defendant's denial letters and the deposition testimony of the Reliance claim administrator that the felony exclusion was the sole reason Mrs. Cox was denied benefits.

On October 5, 2001, Summary Judgment was entered in favor of plaintiff. Defendants filed a Notice of Appeal on October 25, 2001.[5]

## DISCUSSION

■ Under ERISA, the court has discretion to award reasonable attorney's fees and costs to the prevailing party. 29 U.S.C. § 1132(g). In determining whether or not to award attorneys' fees, a court should consider the degree of opposing party's culpability or bad faith; the ability of the opposing party to satisfy an award of attorneys' fees;[6] whether an award of attorneys' fees would deter other persons acting under similar circumstances; whether the party requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and the relative merits of the parties' positions. *Quesinberry v. Life Ins. Co. Of N. Am.*, 987 F.2d 1017, 1030 (4th Cir.1993); *Reinking v. Philadelphia American Life Ins. Co.*, 910 F.2d 1210 (4th Cir.1990). None of these factors is decisive; however they constitute the nucleus

of the inquiry. *Custer v. Pan American Life Ins. Co.*, 12 F.3d 410, 422 (4th Cir. 1993).

■ Plaintiff argues that Reliance acted in bad faith from its initial denial of benefits until the present. In particular, plaintiff claims that Reliance acted in bad faith when it failed to investigate adequately plaintiff's claim, and sought out, but then unreasonably rejected, the Commonwealth's Attorney's conclusion that it would be impossible to determine whether or not Mr. Cox was committing a felony at the time of his death.[7] Plaintiff also contends that defendant's improper interpretation of the *mens rea* element requirement of the Virginia Criminal Code amounted to a lack of good faith.[8]

In response, defendant reargues its positions that the felony exclusion was applicable and that plaintiff failed to meet her burden of establishing that her husband's death was "not an accident." Reliance contends that its arguments were supported by state and federal case law and, therefore, not asserted in bad faith.

We find that defendant's actions were unreasonable and therefore in bad faith when it initially denied plaintiff's claim for benefits. Reliance should have investigated plaintiff's claim for benefits before issuing

5. To date, neither party has requested that this Court defer ruling on plaintiff's motion for attorneys' fees until resolution of the appeal.

6. Reliance admits that it is able to pay plaintiff's attorneys' fees. *See* Defendant's Opposition at 4. However, defendant contends that if it is required to pay attorneys' fees, employers' premiums will likely rise and, accordingly, employers will be deterred from providing accidental death benefits to their employees.

7. Unlike the Reliance claim administrators, who based their decisions on limited information including the Medical Examiner's report

and news clippings, the Commonwealth's Attorney based his opinion on review of Prince William County police reports and other evidence relating to the shooting of Brian Cox, as well as his expert knowledge of Virginia's substantive criminal law.

8. The Virginia criminal statute requires proof that a defendant knew or had reason to know that the person he or she was assaulting was a law enforcement officer. Reliance misconstrued the statute to require only that a defendant "should have known" that the person he or she was assaulting was a law enforcement officer.

the denial. At minimum, Reliance should have waited until internal and external investigations into the shooting had been completed. The claims administrator should have also considered more carefully the Commonwealth Attorney's opinion that it was impossible to determine whether or not Mr. Cox was committing a felony at the time of his death.[9]

In addition, Reliance never espoused the "non-accident" rationale during the administrative process and defendant presented no evidence to support the view that it denied Mrs. Cox's claim for any reason other than the policy's felony exclusion. In fact, during the Fed.R.Civ.P. 30(b)(6) deposition of Richard Walsh, one of Reliance's claims administrators, he admitted that the felony exclusion was the sole reason for the denial. We find that Reliance's later claim that Mr. Cox's death was "not an accident" was insincere and simply not credible. For these reasons, the first factor favors an award of fees.

The "deterrence" factor also favors an award of fees because such an award might cause insurance companies, including Reliance, to be more thorough in making their initial determinations to either grant or deny benefits. In addition, an award of fees might encourage insurance companies, including Reliance, to be more flexible about reconsidering initial decisions to deny benefits once more facts are known.

Although, plaintiff contends that this lawsuit involved and resolved a significant legal issue of first impression, she fails to articulate specifically what unique legal or factual issue the Court resolved. We find,

to the contrary, that this civil action did not raise any new legal issues and that the facts are not likely to be repeated. Therefore, this factor does not favor an award of attorneys' fees.

On the other hand, the relative merits of the parties' positions supports an award of attorneys' fees for plaintiff. Plaintiff's husband was shot to death in his own bedroom by police officers responding to a suspected burglary. His death was unintended and, therefore, an accident.

In light of the information before the claims administrators at the time the decision to deny benefits was made, it was unreasonable for Reliance to invoke the felony exclusion. As stated above, defendant's "non accident" rationale was articulated too late and lacks credibility. Having considered the relevant factors, we conclude that an award of reasonable attorneys' fees is appropriate in this case.

Once it is determined that an award of attorneys' fees is appropriate, we must arrive at the "lodestar" figure. The lodestar is calculated by multiplying the reasonable number of hours worked by an appropriate hourly rate. *See, e.g., Brodziak v. Runyon*, 145 F.3d 194, 196 (4th Cir.1998).

Plaintiff retained the Washington, D.C. law firm of Regan, Halperin & Long to represent her in this matter. The representation was undertaken on a contingency basis. Four lawyers at Regan, Halperin & Long, including three partners and one associate, claim to have spent 251.13 hours working on this action.[10] Regan, Halperin & Long did not submit the hours of any

---

9. The opinion of the Commonwealth's Attorney focused on the impossibility of determining the requisite mental state for an assault on a law enforcement officer. Reliance's misconstruction of the statute was, at minimum, reckless.

10. From the affidavits, it is clear that Patrick Regan, partner, and Thanos Badsekis, associate, were the principal attorneys working on the case. Halperin and Zambri submitted a total of 11.5 hours on this matter.

support personnel and did not submit any documents detailing litigation costs.[11]

Patrick Regan, a senior partner, claims to have worked 88.5 hours on this case between February 24, 1999 and October 11, 2001. Mr. Regan elected not to submit hours worked when this action was pending in the District of Columbia. Mr. Regan is certified by the National Board of Trial Advocacy. He has practiced exclusively in the area of plaintiffs' civil litigation for over twenty-one years focusing on representing victims in medical malpractice, products liability and other personal injury and wrongful death claims. Mr. Regan bills $425 per hour. Plaintiff claims that all of her attorneys' rates are consistent with the most recent version of the *Laffey* matrix.[12]

Jonathan E. Halperin, also a senior partner, claims to have worked 6.5 hours on this case between September 15, 1999 and September 21, 2001. He, too, specializes in personal injury and products liability litigation. Mr. Halperin also serves as an adjunct professor of law at Catholic University of America, Columbus School of Law, where he teaches Federal Practice and Procedure. Mr. Halperin bills $275 per hour.

Salvatore Zambri, a partner who also specializes in medical malpractice, personal injury and products liability litigation, claims to have worked 5 hours on this case in August, 2001. Like Mr. Halperin, Mr. Zambri has taught Federal Practice and Procedure at Catholic University, Columbus School of Law. Mr. Zambri is not licensed to practice in Virginia. Mr. Zambri bills $245 per hour.

Thanos Basdekis, an associate, claims to have worked 151.13 hours on this matter between September 6, 1999 and October 16, 2001. After graduating from Yale Law School in 1997, he clerked for the Honorable Leonard B. Sand in the Southern District of New York. He then worked at the Washington, DC law firm of Williams & Connolly until August, 1999 when he joined Regan, Halperin & Long. He is not licensed to practice in Virginia, but has been admitted *pro hac vice* for the purposes of this case. Mr. Basdekis bills $215 per hour.

Defendant claims that plaintiff's attorneys' fees are both duplicative and excessive.[13] In particular, defendant contends that it should not have to pay for plaintiff's counsel to attend internal meetings, two lawyers attending the same deposition, fees associated with plaintiff's ("meritless") contention that ERISA did not apply to this action,[14] for hours spent researching

---

**11.** Plaintiff did file a Request to Enter Bill of Costs with the Clerk's Office on October 19, 2001.

**12.** *Laffey* rates are updated yearly. They are considered "useful starting points" for determining reasonable rates in Washington, D.C. *Laffey v. Northwest Airlines, Inc.*, 572 F.Supp. 354, 371 (D.D.C.1983). However, *Laffey* does not control rate determination in the Eastern District of Virginia. *See Cooper v. Paychex, Inc.*, 1998 WL 637274, *12, 163 F.3d 598 (4th Cir. Aug. 31, 1998) (unpublished).

**13.** Defendant summarily complains that plaintiff's attorneys' rates are excessive. De-

fendant does not explicitly challenge the plaintiff's use of the *Laffey* matrix or suggest another method of determining appropriate rates.

**14.** This action was initially filed as a breach of contract action and was in federal court due to diversity of citizenship. On May 18, 2001, Judge Bryan dismissed plaintiff's breach of contract claim and plaintiff was permitted to amend her complaint to state a claim under ERISA. Mr. Basdekis spent 16 hours working on this issue at a claimed cost of $3,440 and Mr. Regan spent 5.25 hours working on this issue at a claimed cost of $2231.25.

and briefing a "simple discovery issue,"[15] and for fees incurred before the filing of this lawsuit.[16] Defendant also objects to the quarter hour intervals by which plaintiff's counsel bills.[17]

■ We do not accept the rates reflected in the *Laffey* matrix because the rates for Northern Virginia lawyers are generally lower than those in the District of Columbia. Consequently, we will reduce Mr. Regan's time to $350 per hour, which we find more consistent with similarly experienced attorneys in this district. Mr. Halperin's, Mr. Zambri's and Mr. Basdekis' rates are reasonable.

■ Although plaintiff seeks fees for four lawyers, our examination of the affidavits submitted by plaintiff's counsel, establishes that Mr. Regan and Mr. Basdekis were the principal attorneys working on this litigation. Mr. Halperin and Mr. Zambri's involvement appears to be incidental.[18] Accordingly, we will not award plaintiff fees for these attorneys' time.

■ As for duplicative billing, we award fees for the time of one attorney when an issue does not require the attention of multiple lawyers. We will also not order defendant to compensate plaintiff's counsel for the eleven (11) hours spent working on this matter before the Complaint was filed. In addition, we agree with defendant that plaintiff's counsel should not recover fees associated with unsuccessfully opposing defendant's motion to dismiss and disputing defendant's contention that ERISA was applicable.

We, therefore, conclude that Mr. Regan should be compensated for 67 hours at $350 per hour and Mr. Basdekis should be compensated for 124.63 hours at $215 per hour. The lodestar figure in this matter is $50,245.45.

The lodestar may be adjusted upward or downward upon consideration of the factors identified in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226–28 (4th Cir.1978).[19]

15. According to plaintiff's Reply memorandum and an analysis of the affidavits, the "simple discovery issue" to which defendant refers is the dispute surrounding plaintiff's attempt to depose Richard Walsh—the claims administrator and 30(b)(6) deponent. Defendant moved for a protective order and to quash plaintiff's deposition subpoena. Judge Buchanan denied defendant's motion and defendant moved for reconsideration. Ultimately, Judge Bryan rejected defendant's request for a protective order and to quash the deposition subpoena. At his deposition, Mr. Walsh stated that Reliance denied plaintiff's claim for benefits on the basis of the felony exclusion.

16. Defendant takes issue with 11 hours billed before this action was filed. The Ninth and Sixth Circuits have limited recovery of fees for prefiling work finding that the language of § 1132(g) permits the award of "attorneys' fees and costs of action to either party." The Fourth Circuit has not issued a similar opinion.

17. It appears as if, sometime between September, 1999 and March 2001, Mr. Regan switched from quarter hour intervals to tenth of an hour intervals.

18. Mr. Halperin and Mr. Zambri submitted a total of 11.5 hours on this matter.

19. The following are the *Kimbrell* factors:
(1) time and labor expended;
(2) novelty and difficulty of question raised;
(3) the skill required to properly perform the legal services rendered;
(4) the attorneys' opportunity costs in pressing the litigation;
(5) the customary fee for like work;
(6) the attorneys' expectation at the outset of the litigation;
(7) time limitations imposed by the client or the circumstances of the case; ·
(8) amount in controversy and the results obtained;
(9) the experience, reputation and ability of the attorneys;
(10) the undesirability of the case within the legal profession;

We have considered all twelve factors and have determined that the lodestar need not be adjusted either upward or downward.

We find that a fee of $50,245.45 is fair and adequate.

The Clerk is directed to forward copies of this Memorandum Opinion to counsel of record.

(11) the nature and length of the professional relationship between the attorney and client; and

(12) attorneys' fees awards in similar cases.